UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DEAIRE BOWMAN,** | ) | CASE NO. 1:13CV1367 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **GREGORY C. JONES, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #37) of Defendants, Gregory Jones and William Tell, for Summary Judgment. For the following reasons, the Motion is granted in part and denied in part.

**I. FACTUAL BACKGROUND**

On June 20, 2013, Plaintiff, Deaire Bowman, filed his Complaint against Patrol Officers, William Tell and Gregory C. Jones, and the City of Cleveland, alleging five causes of action: Excessive Force (Count 1); Excessive Force – Substantive Due Process; (Count 2); Negligence (Count 3); *Monell* Liability (Count 4); and Intentional Infliction of Emotional Distress (Count 5). On July 8, 2014, the City of Cleveland was dismissed from the lawsuit

with prejudice; therefore, Count 4, which alleges municipal liability, is no longer pending.

On June 20, 2011[1], Plaintiff was a passenger in a flat-bed tow truck, which was refueling at a Shell gas station at the intersection of East 93rd and Kinsman Road.  Earlier in the day, Plaintiff and the tow truck driver, Antonio Martin, retrieved a motorcycle from the City of Cleveland impound lot and strapped it to the bed of the truck.

On the previous day, June 19, 2011, Officer Tell ("Tell") observed a motorcycle hit an automobile.  The motorcycle operator ran off; but was identified as Shawn Foster, because he allegedly left behind his Ohio Identification Card at the scene.

On June 20, 2011, Tell was at the intersection of East 93rd and Kinsman Road.  When he observed the motorcycle on the tow truck at the gas station, he believed it to be the same one that was involved in the hit-skip incident the day before.  Tell also believed that the man seated in the passenger seat of the tow truck was the same individual who fled the accident scene the previous day.

Unfortunately, at this point, the parties' versions of the facts diverge:

According to Tell, he advised radio that back-up was necessary in order to detain the hit-skip suspect.  While awaiting back-up, Tell and other officers were informed on the radio to be careful when approaching the suspect.  The arriving officers surrounded the tow truck and drew their service weapons.  The suspect jumped out of the truck and attempted to flee.

---

[1] There is some confusion about the correct dates for the events at issue.  The Complaint, Defendants' Summary Judgment Brief and Defendants' Declarations refer to July 19, 2011 and July 20, 2011.  However, the documentary evidence submitted by Plaintiff for the Court's consideration consistently uses June 19, 2011 and June 20, 2011.  For purposes of this Opinion and Order, the Court will use the June dates.

He ran right into Officer Gregory Jones, and Tell attempted to seize the suspect. Jones and Tell were pressed up against either side of the suspect. Jones's gun was wedged in between his and the suspect's body. During the struggle, Jones's firearm accidentally discharged, shooting the suspect in the neck. (Tell Declaration, ECF DKT #37-1).

According to Jones, he and other officers were informed by radio dispatch that the suspect was Shawn Foster, that Foster had outstanding warrants and that he could be armed. Based on this information, Jones and other officers surrounded the truck with their service weapons drawn. Plaintiff exited the truck, refused all commands to stop and attempted to flee by running directly at Jones. Tell and Jones attempted to seize Plaintiff. In the process, Jones's firearm accidentally discharged and shot Deaire Bowman in the neck. (Jones Declaration, ECF DKT #38-1).

According to Plaintiff, while Martin was re-fueling the tow truck, he stepped out of the passenger side of the vehicle. He was not armed, nor intoxicated, nor under the influence of drugs, nor yelling nor threatening in any manner. He got out of the truck, moved toward the back, and saw Officer Jones pointing his firearm. Plaintiff declares further:

> 11. I was panicked and scared. I made a quick, non-threatening move (similar to a "juke" move) as if I was about to run, but I was still facing Officer Jones. I wanted to get away from being in Officer Jones' line of fire. This is when Officer Jones shot me. My hands were visible and empty.
>
> * * * *
>
> 13. I was not running at the time Officer Jones shot me. I did not 'run into' Officer Jones so as to cause Officer Jones to shoot me. Officer Jones moved towards me with his weapon drawn, pointed at me, and he shot me in the neck.
>
> 14. I was not in physical contact with Officer Jones' gun, arm, hand, wrist or elbow at the time Officer Jones shot me. No part of my body jarred, hit,

> touched or otherwise came into contact with Officer Jones so as to cause Officer Jones to fire his gun. I could see Officer Jones when he shot me. No person, object or other force caused Officer Jones to pull the trigger of his weapon and shoot me other than Officer Jones squeezing the trigger.

(Bowman Declaration, ECF DKT #40-4).

Defendants Jones and Tell move for summary judgment in their favor, asserting that the discharge of Officer Jones's firearm was unintentional, and thus, could not have violated Plaintiff's constitutional rights. Moreover, they assert that the state law claims are barred by operation of the immunity statute, R.C. § 2744.03. Plaintiff has filed a Memorandum in Opposition and Defendants have filed their Reply.

## II. LAW AND ANALYSIS

### Civil Rule 56 Standard

A summary judgment should be granted if the pleadings, depositions, documents, electronically stored information, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(a) and (c). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347. This Court does

not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir.1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir.1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**42 U.S.C. § 1983**

42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

To prove a claim under Section 1983, a plaintiff must demonstrate "that he was deprived of a right secured by the Constitution or laws of the United States, and that he was subjected to or caused to be subjected to this deprivation by a person acting under color of state law." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994).

**Qualified Immunity Doctrine**

The doctrine of qualified immunity is "available to government officials performing

discretionary functions." *Painter v. Robertson*, 185 F.3d 557, 566 (6th Cir.1999). The doctrine provides "immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S.194, 200-201 (2001). Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," the issue should be addressed "early in the proceedings." *Id.*

In determining whether qualified immunity is available, a court must make an initial inquiry of whether, "[t]aken in the light most favorable to the party asserting the injury," the "facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. If no constitutional right has been violated, there is no need for the court to inquire further, as the officer will be entitled to immunity. *Id.*

If, however, the facts could show a constitutional violation, the court must then determine whether the right was clearly established at the time of the officer's conduct. *Id.* A government official will be entitled to immunity from suit as long as his conduct does not violate "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Painter,* 185 F.3d at 567. Any action which is "objectively reasonable" in light of the "clearly established law at the time of the conduct at issue" will be protected by qualified immunity. *Id*. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier,* 533 U.S. at 202.

The individuals raising qualified immunity bear the initial burden of coming forward with facts "to suggest that they were acting within the scope of their discretionary authority." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir.1992). Thereafter, the burden

-6-

shifts to the plaintiff to show "that the defendants' conduct violated a right so clearly established that any official in defendants' positions would have clearly understood that they were under an affirmative duty to refrain from such conduct." *Id.*

Summary judgment based on qualified immunity is not appropriate if there is a factual dispute or genuine issue of material fact "involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Id.* Furthermore, summary judgment should be denied "if the undisputed facts show that the defendant's conduct did indeed violate clearly established rights." *Id.*

**Excessive Force**

Under United States Supreme Court precedent, the use of force is unconstitutional if it is excessive under objective standards of reasonableness. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). See also, *Monday v. Oullette*, 118 F.3d 1099, 1104 (6th Cir.1997), citing *Adams v. Metiva*, 31 F.3d 375, 384-85 (6th Cir.1994).

Determining if a seizure is reasonable entails balancing "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396, quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). A proper balancing analysis considers the circumstances of each case, including, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The Court judges an officer's reasonableness from the perspective of an officer at the scene rather than through its own hindsight. *See id.* Although not every

use of force generates liability, the gratuitous use of force on an incapacitated individual constitutes an excessive use of force. *Morrison v. Board of Trustees of Green Tp.*, 583 F.3d 394, 407 (6th Cir. 2009) (declining to excuse liability based on plaintiff's *de minimis* injury). Yet, a police officer is entitled to use reasonable force when making an arrest. *Marvin v. City of Taylor*, 509 F.3d 234, 252 (6th Cir.2007). An officer is not liable for using reasonable force during an arrest even if he created the need to use force. See *Whitlow v. City of Louisville*, 39 F.App'x 297, 305 (6th Cir.2002).

**Substantive Due Process**

The substantive due process guarantee protects against government power arbitrarily and oppressively exercised. *Daniels v. Williams*, 474 U.S. 327, 331 (1986). For more than a half a century, the Supreme Court has described that level of abuse of power as that which shocks the conscience. *Rochin v. California*, 342 U.S. 165, 172-173 (1952) (finding the forced pumping of a suspect's stomach enough to offend due process as conduct "that shocks the conscience" and violates the "decencies of civilized conduct."). In *Breithaupt v. Abram*, 352 U.S. 432 (1957), the Supreme Court repeated the principle that conduct that "'shocked the conscience' and was so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency" would violate substantive due process. *Id* at 435.

The validity of a § 1983 claim, such as the one before this Court, must be weighed in reference to a specific constitutional standard, rather than to some generalized "excessive force" standard. Where the excessive force claim occurs in the context of an arrest or investigatory stop, it appropriately invokes the citizens' Fourth Amendment protections "to be secure in their persons ... against unreasonable ... seizures." *See Tennessee v. Garner*,

*supra*.

> Today we make explicit what was implicit in *Garner*'s analysis, and hold that *all* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other "seizure of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham*, 490 U.S. at 395.

## Ohio Statutory Immunity

The Ohio Political Subdivision Tort Liability Act, codified in Revised Code Chapter 2744, provides that political subdivisions and their employees are immune from liability for alleged tort claims, so long as none of the enumerated exceptions applies.

R.C. § 2744.03(A)(6)(b) provides:

> In a civil action brought against ... an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function ... the employee is immune from liability unless ...[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

"Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St.3d 380, 389 (2012); *Hawkins v. Ivy*, 50 Ohio St.2d 114, 117-118 (1977).

"Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is

-9-

substantially greater than negligent conduct."  *Anderson, id.*; *Thompson v. McNeill*, 53 Ohio St.3d 102, 104-105 (1990).

**Count 1 - Excessive Force - Officer Jones**

Plaintiff alleges that Defendants' unjustified and excessive use of force, while under the color of state law, deprived him of his civil rights as secured by the Fourth Amendment. There is no dispute that Tell and Jones, as Cleveland Police Officers, were acting under the color of state law on June 20, 2011.  There is also no dispute that Plaintiff was shot in the neck with Jones's firearm.

The use of force is unconstitutional if it is excessive under objective reasonableness standards.  *Graham, supra*.  Deciding if a seizure is reasonable requires balancing individual and governmental interests and considering the specific circumstances from the perspective of the officer at the scene, rather than in hindsight.  *Id.; Garner, supra*.

Plaintiff insists that he was not threatening in any way; was not in contact with either Officer Tell or Jones; did not run at or toward Jones; and that Jones pointed his weapon, squeezed the trigger and shot Plaintiff in the neck.  (Bowman Declaration, ECF DKT #40). Jones and Tell relate that Plaintiff exited the truck; refused all commands to stop; ran directly at Jones; was within inches of, and between both officers; and Jones's firearm accidentally discharged, shooting Plaintiff in the neck.  (Jones Declaration, ECF DKT #38; Tell Declaration, ECF DKT #37-1).

The Court has before it directly contradictory declarations, describing an intentional shooting versus an accidental discharge of a service firearm, wounding Plaintiff.  Therefore,

the Court is unable to grant qualified immunity to Officer Jones, because it is not clear whether his conduct violated Plaintiff's constitutional rights. With a genuine factual dispute "involving an issue on which the question of immunity turns," summary judgment in favor of Officer Jones based on qualified immunity as to Count 1 for use of excessive force is inappropriate. *Rich*, 955 F.2d at 1095.

**Count 1 - Excessive Force - Officer Tell**

Plaintiff's Complaint alleges the following as to both Jones and Tell: "The actions of named individual Defendants constitute an unjustifiable and excessive use of force without legal justification." (ECF DKT #1, ¶ 24). In his Declaration (ECF DKT #40-4), Plaintiff makes no mention of Officer Tell at all. Officer Tell's Declaration (ECF DKT #37-1, ¶9) recites only: "I attempted to seize the suspect as he struggled with Officer Jones. Officer Jones and I were pressed up against either side of the suspect." Further, it is undisputed that Officer Tell's service weapon was not discharged.

The Court finds no unconstitutional use of force. Officer Tell's use of force, ***if any***, was not excessive under objective standards of reasonableness. *Graham, supra*.

**Count 2 - Excessive Force - Substantive Due Process**

Plaintiff Bowman alleges in minimal fashion that "[t]he acts and omissions of Defendants Tell and Jones constitute excessive force under the Fourteenth Amendment. Defendants intentionally denied Mr. Bowman of his Fourteenth Amendment rights." (ECF DKT #1, ¶ 29). Following the guidance of the Supreme Court, this Court grants Defendants' Motion for Summary Judgment on this Count.

In *Graham*, 490 U.S. at 395, the Supreme Court expressly held that "all claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Therefore, the Court finds no viable Fourteenth Amendment Substantive Due Process claim against Officer Jones.

As regards Officer Tell, there is no evidence of excessive force for purposes of the Fourth Amendment; and that applies equally to the Fourteenth Amendment.

The Court notes that for the first time, in his Memorandum in Opposition, Plaintiff posits the liability theory that his constitutional rights were violated when Tell misrepresented information regarding Shawn Foster's warrants and/or his level of criminality. The available evidence does not support this theory.

The Use of Deadly Force Report synopsis relates that a male voice radioed the officers that the suspect (believed to be Shawn Foster) had multiple warrants. (ECF DKT #40-6). In his Declaration, Officer Jones avers: "The other officers and I were informed by the radio dispatch that the suspect was Shawn Foster and that Foster had outstanding warrants and could possibly be armed." (ECF DKT #38-1). Further, Officer Tell states: "As I was waiting for other officers to arrive, I, along with other officers on the radio channel, were informed to be careful when approaching the suspect." (ECF DKT #37-1). Plaintiff cannot establish that Officer Tell is the source of the warrant information nor that it was false.

The Court holds that Plaintiff cannot allege new claims for relief in a brief, without ever seeking leave to amend his Complaint. In addition, the facts do not back him up. Even

-12-

if the Court were to accept the allegation that Tell misrepresented facts about the number of warrants or about the seriousness of Foster's criminal charges, this conduct does not shock the conscience nor offend the decency of a civilized society so as to violate Fourteenth Amendment Substantive Due Process.

Summary Judgment is granted in favor of Defendants Tell and Jones on Count 2 of Plaintiff's Complaint.

**Count 3 - Negligence**

Plaintiff alleges: "The Defendants Tell and Jones acted in a negligent manner such that Mr. Bowman sustained injury, damages and economic and non-economic losses. Their conduct is not subject to the defense of immunity, set forth in Ohio Revised Code § 2744.01 *et seq.*, based on the fact that they acted in a willful, wanton, and reckless manner." (ECF DKT #1, ¶ 32).

The Court finds that this claim for relief is internally inconsistent. Though captioned "Negligence," Count 3 uses terms for conduct which are all degrees more than negligence.

> Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury.

*Anderson*, 134 Ohio St.3d at 388, citing *Tighe v. Diamond*, 149 Ohio St. 520, 527 (1948).

> Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result.

*Anderson, id., citing Hawkins*, 50 Ohio St.2d at 117-118.

Reckless conduct is characterized by the conscious disregard of or indifference

to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.

*Anderson, id., citing Thompson*, 53 Ohio St.3d at 104-105.

Not only is Plaintiff's pleading deficient, but his own affidavit evidence describes Defendants' conduct as other than accident and other than negligent. Plaintiff cannot maintain a negligence claim against either Tell or Jones. Summary Judgment is granted in their favor on Count 3.

**Count 5 - Intentional Infliction of Emotional Distress ("IIED")**

In order to prevail on a claim for IIED Plaintiff must prove:

(1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff;

(2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;

(3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and

(4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Kovac v. Superior Dairy, Inc.* 930 F.Supp.2d 857, 870 (N.D.Ohio 2013) citing *Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1110 (6th Cir.2008).

 "Conduct giving rise to an IIED claim must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Kovac,* 930 F.Supp.2d at 870 quoting *Long v. Ford Motor Co.,* 193 F.App'x 497, 503 (6th Cir.2006). "[T]o say that Ohio courts narrowly define 'extreme and outrageous' conduct would be something of an understatement." *Baab v. AMR Servs. Corp.,* 811 F.Supp. 1246, 1269 (N.D.Ohio 1993).

-14-

"'Serious' emotional distress must be 'severe and debilitating.'" *Kovac,* 930 F.Supp.2d at 870, see also *Long,* 193 F.App'x at 503, quoting *Paugh v. Hanks,* 6 Ohio St.3d 72 (1983).

In his Declaration (ECF DKT #40-4), Plaintiff Bowman states:

> As a result of this incident, I was taken to the hospital with serious and life-threatening injuries. It was a horrible event and I will never forget it. I will occasionally still have dreams about it. Every time I look in the mirror, I see the bullet scar on my neck. It changed my life for the worse.

*Id.* at ¶ 16.

Defendants argue that the discharge of Officer Jones's weapon was accidental; so, Jones could not have intended to cause emotional distress and his conduct could not be characterized as extreme or outrageous. Plaintiff counters that: "Based on the facts set forth herein, and based on the fact that Mr. Bowman sustained an objective life-threatening injury when he was unarmed and had committed not (sic) crime, Jones is not entitled to summary judgment as to Mr. Bowman's intentional infliction of emotional distress claim." (ECF DKT #40 at 19).

The Court finds, first of all, that Plaintiff has not come forward with any probative evidence that Officer Tell is liable for IIED. In fact, Plaintiff's Declaration and Opposition make no mention of Defendant Tell on this claim; and thus, concede that Tell is entitled to judgment in his favor.

As for Defendant Jones, the Court holds that Plaintiff's Declaration offers sufficient evidence that the shooting was intentional and that Plaintiff suffered, and will continue to suffer psychic injury as the result of Jones's actions. Summary Judgment is denied as to Officer Jones on Count 5 of Plaintiff's Complaint.

### III. CONCLUSION

For these reasons, the Motion (ECF DKT #37) of Defendants, Gregory Jones and William Tell, for Summary Judgment is granted in part and denied in part.

**IT IS SO ORDERED.**

                                    **s/ Christopher A. Boyko**
                                    **CHRISTOPHER A. BOYKO**
                                    **United States District Judge**

**Dated:  March 10, 2015**